**Automated World Health**



Select Language ⌄
Powered by Google Translate

Home

# LCD/NCD Portal

Diagnostic



Local Coverage Determination (LCD) for Vestibular Function Tests (L29305)

Contractor Information

Contractor Name First Coast Service Options, Inc.

Contractor Number 09102

Contractor Type MAC - Part B

LCD Information
Document Information

LCD ID Number L29305

LCD Title Vestibular Function Tests

Contractor's Determination Number 92540

Primary Geographic Jurisdiction Florida

Oversight Region Region IV

AMA CPT/ADA CDT Copyright Statement

CPT only copyright 2002-2011 American Medical Association. All Rights Reserved. CPT is a registered trademark of the American Medical Association.
Applicable FARS/DFARS Apply to Government Use. Fee schedules, relative value units, conversion factors and/or related components are not assigned by the AMA, are not part of CPT, and the AMA is not recommending their use. The AMA does not directly or indirectly practice medicine or dispense medical services. The AMA assumes no liability for data contained or not contained herein. The Code on Dental Procedures and Nomenclature (Code) is published in Current Dental Terminology (CDT). Copyright © American Dental Association. All rights reserved. CDT and CDT-2010 are trademarks of the American Dental Association.

Original Determination Effective Date
For services performed on or after 02/02/2009 Original Determination Ending Date

Revision Effective Date
For services performed on or after 06/14/2011 Revision Ending Date

CMS National Coverage Policy

Title 42 of the Code of Federal Regulations, Section 410.32

CMS Manual System, Pub. 100-02, Medicare Benefit Policy Manual, Chapter 15, Section 50.4.1 CMS Manual System, Pub. 100-08, Program Integrity Manual, Chapter 13, Section 5.1
Transmittals 84 & 1470, Change Request 5717, dated February 29, 2008

Indications and Limitations of Coverage and/or Medical Necessity
The vestibular system is the system of balance and equilibrium. The vestibuloocular reflex (VOR) forms the basis for many of the clinical tests used to evaluate balance function. The vestibular system controls reflexes that maintain stable vision and posture.

Vestibular function tests are tests of function. The tests are used to determine potential causes of balance disturbances, and they tests help to determine if there is a problem with the vestibular portion of the brainstem and inner ear. The balance system depends on the inner ear, the eyes and the muscles and joints to send information related to the body's movement and orientation in space. When there are problems with the inner ear or other parts of the balance system, the patient may present with symptoms of vertigo, dizziness, imbalance or other symptoms.

This Local Coverage Determination (LCD) will define the vestibular function tests and the criteria for coverage for procedure codes 92541 through 92547 only. This LCD does not address Computerized Dynamic Posturography (CDP) or audiometry tests. Please refer to those individual LCDs for coverage criteria.

Indications for vestibular function testing:


DEFENDANT'S EXHIBIT
tabbies
5

10/29/2015

A complete picture of the patient is necessary to determine if diagnostic testing is warranted. A complete history, physical exam and review of medications must be performed before ordering diagnostic tests.

By performing the history and physical and medication review, the physician can often differentiate between vestibular and non-vestibular dizziness. The differentiation of the two is important because true spinning vertigo is often inner ear related and non-vertigo symptoms may be due to inner ear problems as well as CNS, cardiovascular, or systemic diseases or by medications that cause cardiovascular, CNS or ototoxic symptoms. In the case where it is clearly evident that the symptoms are non-vestibular in nature, then vestibular testing should not be done. However, if the physician cannot definitively differentiate between the two and feels vestibular testing is justified, then the medical record should clearly support the need to proceed with vestibular testing.

Evaluating the VOR requires application of a vestibular stimulus and measurement of the resulting eye movements. Quantitative test of physiological processes under vestibular control can be useful in identifying the cause of the patient's symptoms, confirming findings noted on the history and physical exam, planning therapeutic interventions and monitoring the response to those interventions.

A standard vestibular function test battery includes 1.) tests of visual ocular control; 2.) a careful search for pathologic nystagmus with fixation and with eyes open in darkness and with 3.) measurement of induced physiologic nystagmus.

The following vestibular function tests are covered under this LCD:

92540—Basic vestibular evaluation, includes spontaneous nystagmus test with eccentric gaze fixation nystagmus, with recording, positional nystagmus test, minimum of 4 positions, with recording, optokinetic nystagmus test, bidirectional foveal and peripheral stimulation, with recording, and oscillating tracking test, with recording

92541—Spontaneous nystagmus test, including gaze and fixation nystagmus, with recording. ENG electrodes or video goggles are placed and the patient is asked to look straight ahead, 30-45 degrees to the right and 30-45 degrees to the left. Recordings are made to detect spontaneous nystagmus.

92542—Positional nystagmus test, minimum four positions, with recording
The patient is placed in a variety of positions, including supine with head extended dorsally, left and right and sitting, in an attempt to induce nystagmus. With the patients eyes closed, an ENG recording is made or with the patients eyes wide open in total darkness a VNG recording is made to detect nystagmus.

92543—Caloric vestibular test, each irrigation (binaural, bithermal stimulation constitutes four tests), with recording. Each ear is separately irrigated with cold water/air and then warm water/air to create nystagmus in the patient. ENG/VNG recordings are evaluated to detect any difference between the nystagmus of the right side and the left side. Four irrigations occur, warm and cold irrigations for both the right and left ears.

92544—Optokinetic nystagmus test, bidirectional, foveal or peripheral stimulation, with recording
This test is usually performed with moving LED lights, with the patient watching the movement of the lights to the right and left. ENG electrodes or VNG recordings are used to record nystagmus.

92545—Oscillating tracking test, with recording
With ENG electrodes or video goggles in place, the patient watches an LED light moving in a pendular motion. A recording is made of the eye tracking motion. The recording is then analyzed for smoothness.

92546—Sinusoidal vertical axis rotational testing

The patient is seated in a rotary chair with the head bent forward 30 degrees. ENG electrodes are placed or VNG goggles are placed to measure nystagmus while the chair is rotated with the patients eyes closed. A recording is made and studies to determine and abnormal labyrinthine response on one side or the other. Auto Head Rotation Tests, sometimes referred to as Active-Head Rotation Tests, involves recording head and eye position while the patient actively turns his or her head side to side or up and down at progressively faster frequency, may be performed if the rotary chair is not available/used. These tests are not "head-shake" tests.

92547—Use of vertical electrodes (list separately in addition to code for primary procedure) ENG electrodes are placed to measure vertical and rotary nystagmus.

For the purpose of this LCD, both VNG and ENG are acceptable methods used to record findings from the above- mentioned tests.

All diagnostic tests must be ordered by the physician who is treating the beneficiary, that is, the physician who furnishes a consultation or treats a beneficiary for a specific medical problem and who uses the results in the management of the beneficiary's specific medical problem. Tests not ordered by the physician who is treating the beneficiary are not reasonable and necessary (42 CFR § 410.32). All diagnostic tests covered under section 1861 (s)(3) of the Act and payable under the physician fee schedule must be furnished under the appropriate level of supervision by a physician as defined in section 1861 (r) of the Act. Services provided without the appropriate level of supervision are not reasonable and necessary.

The diagnostic tests covered in this LCD require a general level of supervision. General supervision means the procedure is furnished under the physician's overall direction and control, but the physician's presence is not required during the performance of the procedure. Under general supervision, the training of the non-physician personnel that actually performs the diagnostic procedure and the maintenance of the necessary equipment and supplies are the continuing responsibility of the physician. Diagnostic tests personally furnished by a qualified audiologist as defined in section 1861 (ll)(3) of the act are not subject to the general supervision policy described above (42 CFR § 410.32).

Diagnostic testing, including hearing and balance assessment services, performed by a qualified audiologist is covered as "other diagnostic tests" under §1861 (s)(3) of the Act when a physician orders such testing for the purpose of obtaining information necessary for the physician's diagnostic evaluation or to determine the appropriate medical or surgical treatment of a hearing deficit or related medical problem. Services are excluded by virtue of §1862 (a)(7) of the Act when diagnostic information required to determine the appropriate medical or surgical treatment is already known to the physician, or the diagnostic services are performed only to determine the need for or the appropriate type of hearing aid.

If a beneficiary undergoes diagnostic testing performed by an audiologist without a physician referral, the tests are not covered even if the audiologist discovers a pathologic condition.

See Pub. 100-02, Chapter 15, Section 80.3 for a complete discussion on audiological diagnostic testing requirements, including ordering, performing coverage and payment

Vestibular Function Tests may be covered when performed by a qualified audiologist or the physician treating the patient. For the diagnostic tests in this LCD, the physician should have training and expertise as defined below:

Training and Expertise

CMS Online Manual System, Pub. 100-08, Program Integrity Manual, Chapter 13, Section 5.1 outlines that " reasonable and necessary" services are "ordered and/or furnished by qualified personnel." A qualified physician  for this service/procedure is defined as follows: A) Physician is properly enrolled in Medicare. B) Training and expertise must have been acquired within the framework of an accredited residency and/or fellowship program in the applicable specialty/subspecialty in the United States or must reflect equivalent education, training, and expertise endorsed by an academic institution in the United States and/or by the applicable specialty/subspecialty society in the United States.

Services will be considered medically reasonable and necessary only if performed by appropriately trained providers. This training and expertise must have been acquired within the framework of an accredited residency and/or fellowship program in Otolaryngology, Neurology or Otology/Neurology or must reflect extensive continued medical education activities.

Section 1861(11)(3) of the Act, provides that a qualified audiologist is an individual with a master's or doctoral degree in audiology. Therefore a Doctor of Audiology (AuD) 4th year student with a provisional license from a state does not qualify unless he or she also holds a Master's or doctoral degree in audiology. In addition, a qualified audiologist is an individual who:

- Is licensed as an audiologist by the State in which the individual furnishes such services; or
- In the case of an individual who furnishes services in a State which does not license audiologist
- Successfully completed 350 clock hours of supervised clinical practicum (or is in the process of accumulating such supervised clinical experience),

Performed not less than nine months of supervised full-time audiology services after obtaining a master's or doctoral degree in audiology or a related field, and

- Successfully completed a national examination in audiology approved by the Secretary.

For Audiologist in the State of Florida, the requirements for licensure in the areas of education, supervised clinical requirements and professional experience requirements were revised effective July 25, 2006. These requirements can be found in The 2006 Florida Statutes, Chapter 468, Part I, ss 468.1105-468.1315. For this LCD, an audiologist must meet all the requirements outlined in the Statutes.

Limitations:

- If a beneficiary undergoes diagnostic tests performed by an audiologist without a physician referral, the tests are not covered, even if the audiologist discovers a pathological condition.
- Diagnostic tests ordered before a physician performs a complete history, physical and medication review to rule out non-vestibular causes of balance problems, will not be seen as medically reasonable and necessary.
- When diagnostic information required to determine the appropriate medical or surgical treatment is already known to the physician, or the diagnostic services are performed only to determine the need for or the appropriate type of hearing aid, these services are not covered.

Coding Information

Bill Type Codes:

Contractors may specify Bill Types to help providers identify those Bill Types typically used to report this service. Absence of a Bill Type does not guarantee that the policy does not apply to that Bill Type. Complete absence of all Bill Types indicates that coverage is not influenced by Bill Type and the policy should be assumed to apply equally to all claims.

999x Not Applicable

Revenue Codes:

Contractors may specify Revenue Codes to help providers identify those Revenue Codes typically used to report this service. In most instances Revenue Codes are purely advisory; unless specified in the policy services reported under other Revenue Codes are equally subject to this coverage determination. Complete absence of all Revenue Codes indicates that coverage is not influenced by Revenue Code and the policy should be assumed to apply equally to all Revenue Codes.

99999 Not Applicable

CPT/HCPCS Codes

92540 BASIC VESTIBULAR EVALUATION, INCLUDES SPONTANEOUS NYSTAGMUS TEST WITH ECCENTRIC GAZE FIXATION NYSTAGMUS, WITH RECORDING, POSITIONAL NYSTAGMUS TEST, MINIMUM OF 4 POSITIONS, WITH RECORDING, OPTOKINETIC NYSTAGMUS TEST, BIDIRECTIONAL FOVEAL AND PERIPHERAL STIMULATION, WITH RECORDING, AND OSCILLATING TRACKING TEST, WITH RECORDING
92541 SPONTANEOUS NYSTAGMUS TEST, INCLUDING GAZE AND FIXATION NYSTAGMUS, WITH RECORDING
92542 POSITIONAL NYSTAGMUS TEST, MINIMUM OF 4 POSITIONS, WITH RECORDING
92543 CALORIC VESTIBULAR TEST, EACH IRRIGATION (BINAURAL, BITHERMAL STIMULATION CONSTITUTES 4 TESTS), WITH RECORDING
92544 OPTOKINETIC NYSTAGMUS TEST, BIDIRECTIONAL, FOVEAL OR PERIPHERAL STIMULATION, WITH RECORDING
92545 OSCILLATING TRACKING TEST, WITH RECORDING

92546 SINUSOIDAL VERTICAL AXIS ROTATIONAL TESTING
92547 USE OF VERTICAL ELECTRODES (LIST SEPARATELY IN ADDITION TO CODE FOR PRIMARY PROCEDURE)

ICD-9 Codes that Support Medical Necessity

386.00 - 386.04 MÉNIÈRE'S DISEASE, UNSPECIFIED - INACTIVE MÉNIÈRE'S DISEASE
386.10 - 386.19 PERIPHERAL VERTIGO UNSPECIFIED - OTHER PERIPHERAL VERTIGO
386.2 VERTIGO OF CENTRAL ORIGIN
386.30 - 386.35 LABYRINTHITIS UNSPECIFIED - VIRAL LABYRINTHITIS
386.40 - 386.48 LABYRINTHINE FISTULA UNSPECIFIED - LABYRINTHINE FISTULA OF COMBINED SITES
386.50 - 386.9 LABYRINTHINE DYSFUNCTION UNSPECIFIED - UNSPECIFIED VERTIGINOUS SYNDROMES AND LABYRINTHINE DISORDERS
780.4 DIZZINESS AND GIDDINESS

Diagnoses that Support Medical Necessity N/A

ICD-9 Codes that DO NOT Support Medical Necessity

Any ICD-9-CM code not listed under ICD-9 Codes that Support Medical Necessity XX000 Not Applicable

ICD-9 Codes that DO NOT Support Medical Necessity Asterisk Explanation

Diagnoses that DO NOT Support Medical Necessity N/A

General Information

Documentations Requirements

The medical record must clearly indicate the medial necessity of the services being billed. In addition, documentation that the service was actually performed must be included in the patient's medical record.

The services covered in this LCD require a recording be obtained at the time the service is rendered. These recordings must be maintained in the patient's medical record and be made available to Medicare upon request. The procedure report by itself is not enough to show that the services being billed are medically reasonable and necessary. Documentation of the medical necessity of the service is typically found in the office note when the service is performed in an office setting or the physicians progress note(s) when the service is performed in a facility setting.

The medical record must contain a detailed history and physical exam including a complete medication review. The medical record must support that other physiological/psychological, medication or other systemic reasons that could cause the balance problems were ruled out and that it is medically necessary to proceed with diagnostic testing of the vestibular system. The medical record must also contain the name and serial number of the equipment used to perform the vestibular tests.

The physician ordering the vestibular test covered in this LCD must appear on the audiologist claim.

All documentation requirements outlined above must be made available to Medicare upon request for review.

Appendices

Utilization Guidelines It is rare that a specific symptom occurs in only one disease and that the diagnosis can be established based on the presence of this symptom only - a term called pathognomic. As many conditions have "overlapping" symptoms and findings, a methodical and thorough scientific approach must be used to narrow down the possibilities. The selection of diagnostic procedures is not random. It usually follows accepted clinical paradigms.

The first step in any diagnostic evaluation is the history and physical examination. From here on, the provider develops a testing strategy depending on an individual patient's situation, her or his progression in the course of an illness, and the probability of an abnormal result for a given diagnostic test. Other considerations include the predictive values, invasiveness, and risks of certain testing modalities. This is not an all-inclusive list, and all aspects and pros and cons must be placed into perspective against the background of an individual patient's situation. For example, patient's who have been previously diagnosed with coronary artery disease and who are stable, generally do not need cardiac catheterization. However, once they develop unstable angina, they are subjected to coronary arteriography. Similarly, not all patients with headaches require a CT scan, but they do if there is reason to suspect an intracranial neoplasm or life-threatening vascular pathology.

It is not appropriate to merely match a diagnostic test (CPT code) with a condition (ICD-9 code) for which it could be performed at some point and time during an episode of an illness. There must be a compelling patient care reason, and a constellation of factors that require the carrying out of this test must exist at the time when the testing is ordered and performed. Furthermore, the treating provider must be able to use the test results in the patient's care. This rationale for ordering and performing a diagnostic test at a certain point in a patient's evaluation and treatment must be documented in the medical record.

This prudent evaluative approach is not only a regulatory requirement (Code of Federal Regulations (CFR), Title 42, part 410.32). It is primarily the standard of accepted medical practice, as anchored in medical teaching and reputable peer reviewed medical literature. Diagnostic testing that is not in keeping with these principles is not reimbursable by Medicare.

It is expected that these services would be performed as indicated by current peer reviewed medical literature and/or standards of practice. When services are performed in excess of established parameters, they are subject to medical review for medical necessity.

It is generally not medically necessary to repeat the entire battery of vestibular function tests. In the instance where testing is performed to assess the efficacy of medical or surgical intervention, testing should be limited to those tests medically necessary to determine the success of treatment and guide further therapy. If the complete battery of tests are repeated, the medical record must clearly reflect the medical necessity of such an approach. When symptoms have resolved and then recurred absent any medical or surgical intervention, a repeat of the entire battery of tests must be substantiated by clear documentation in the medical record as to why extensive repeat testing is medically necessary.

For procedure code 92543: if four tests are performed (i.e., warm and cold water each in the right and left ear) then 92543 is reported four times. If only one ear is irrigated or one temperature is used, then the corresponding number of codes should be reported (one irrigation= 92543x1; two irrigations= 92543x2, etc.). The maximum number of test reported is 4. The medical record should clearly support the number of tests that are reported.

Medicare would not expect to see 92540, 92541, 92542 or 92544, 92545 or 92546 billed more than once during a session. If an additional unit of 92545 or 92546 were billed, it would be expected that the medical record documentation would clearly support the billing of an extra unit.

Sources of Information and Basis for Decision

American Academy of Audiology (2004). Audiology: Scope of Practice. Retrieved 8/15/2006 from http://www.audiology.org.

American Academy of Audiology. Position Statement on the Audiologist's role in the diagnosis & treatment of vestibular disorders. Retrieved 8/15/2006 from http://www.audiology.org.

American Medical Association, CPT Assistant, September 2006, Volume 16 issue 9; page13

Amin, M., et al (2005). Rotary chair testing. Retrieved 8/28/06 from http://www.emedicine.com/ent/topic480.htm.

Chawla, N. and Olshaker, J. (2006). Diagnosis and Management of Dizziness and Vertigo. Medical Clinics of North America, 90(2). W.B. Saunders Company.

Cummings, C. , Flint, P., et al (2005). Otolaryngology: Head & Neck Surgery, 4th ed. Part Twelve, Chapter 38. Mosby, Inc.

Fife, T.D., Tusa, R.J., et al (2000). Assessment: Vestibular testing techniques in adults and children. Report of the therapeutics and technology assessment subcommittee of the American Academy of Neurology. American Academy of Neurology, 55, 1431-1441. Retrieved 8/28/06 from www.neurology.org.

Florida Statutes 2006. Available at www.leg.state.fl.us/statutes

Friedman, M. et al (2006). Dizziness, Vertigo and Imbalance. Retrieved 8/29/06 from http://www.emedicine.com.

Goldman, L., Arend, W., et al (2004). Cecil Textbook of Medicine, 22nd edition. 2439-2442, W.B. Saunders Company.

Hain, T. (2004). Vestibular Testing. Retrieved 8/28/06 from http://www.tchain.com/otoneurology/testing/engrot.html.

Shoup, A., et al (2005). Electronystagmography. Retrieved 8/29/06 from http://www.emedicine.com.

Vestibular Disorders Association (2005). Possible Symptoms of Vestibular Disorders. Retrieved 8/15/06 from http://www.vestibular.org.

Advisory Committee Meeting Notes This Local Coverage Determination (LCD) does not reflect the sole opinion of the contractor or Contractor Medical Director. Although the final decision rests with the contractor, this LCD was developed in cooperation with advisory groups, which includes representatives from numerous societies.

Start Date of Comment Period

End Date of Comment Period

Start Date of Notice Period 01/01/2010

Revision History Number 2

Revision History Explanation Revision Number:2 Start Date of Comment Period:N/A
Start Date of Notice Period:07/01/2011 Revised Effective Date:06/14/2011

LCR B2011-079
June 2011 Connection

Explanation of Revision: Based on an outside request to clarify our current training statement outlined in this LCD, language under the "Indications" section of the LCD has been deleted and replaced with a revised statement regarding the qualification and training. Revisions will be effective based on process date.

Revision Number:1
Start Date of Comment Period:N/A Start Date of Notice Period:01/01/2010 Revised Effective Date: 01/01/2010

LCR B2010 - 013
December 2009 Update

Explanation of Revision: Annual 2010 HCPCS Update. Added CPT code 92540. "Contractor's Determination Number" changed from 92541 to 92540. The effective date of this revision is based on date of service.

Revision Number:Original
Start Date of Comment Period:N/A Start Date of Notice Period:12/04/2008 Revised Effective Date:02/02/2009

LCR B2009-
December 2008 Bulletin

This LCD consolidates and replaces all previous policies and publications on this subject by the carrier predecessors of First Coast Service Options, Inc. (Triple S and FCSO).

For Florida (00590) this LCD (L29305) replaces LCD L24039 as the policy in notice. This document (L29305) is effective on 02/02/2009.

11/15/2009 - The description for CPT/HCPCS code 92543 was changed in group 1

Reason for Change

Related Documents
This LCD has no Related Documents.

LCD Attachments
code guide effective 6/14/2011

All Versions

Updated on 07/17/2011 with effective dates 06/14/2011 - N/A Updated on 12/21/2009 with effective dates 01/01/2010 - 06/13/2011 Updated on 11/15/2009 with effective dates 02/02/2009 - N/A Updated on 11/30/2008 with effective dates 02/02/2009 - N/A